CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 29 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:06CR00038-9 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| VOLNER MARSAILLE[1], | ) | |
|    a/k/a "Goldie", | ) | |
|    a/k/a "Marsaille Volner", | ) | |
| | ) | |
| | ) | By:  B. WAUGH CRIGLER |
|    Defendant. | ) |        U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with willfully and knowingly combining, conspiring, confederating and agreeing with persons, known and unknown to the Grand Jury, to commit the following offenses against the United States, to wit: conspiring to distribute in excess of 50 or more grams of cocaine base (crack cocaine), in violation of Title 21, United States Code, Section 846, all in violation of Title 21, United States Code, Section 846; in Counts Fourteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, and Twenty Four with knowingly distributing less than five grams of cocaine base, in violation of Title 21, United States Code, Section 841; and in Count Twenty with knowingly and intentionally possessing with intent to distribute 7.473 grams of cocaine base or a mixture or substance containing

---

[1] The Indictment identifies the defendant as Marsaille Volner. By oral motion and order on September 18, 2006, the defendant's name was corrected/amended to reflect that his first name is Volner and his last name is Marsaille. (Dkt. Nos. 81, 82.)

a detectable amount of cocaine base, or "crack," a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B).

On January 16, 2007, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One pursuant to a plea agreement between defendant and the government. The government has agreed to move for the dismissal of the remaining counts of the Indictment as they pertain to defendant upon acceptance of his guilty plea. The defendant agreed that the government had probable cause to bring all counts in the Indictment which are being dismissed.

At this hearing the defendant was placed under oath and testified that his full legal name is Volner Marsaille, he was born on November 21, 1983, and he attended high school up to the tenth grade. The defendant stated that he is able to read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense and was satisfied that defendant understood the terms of the plea agreement.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement

2

and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt any facts alleged in Count One. The defendant further testified that he knew that the government retained its right to appeal any sentencing issues.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which he is charged in Count One is a felony and that if his plea is accepted, he will be adjudged guilty of that offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant further acknowledged that he consented to forfeit any right, title and interest he has in assets purchased with proceeds of his illegal activity, directly or indirectly and that such a forfeiture of property is proportionate to the degree and nature of the offense he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense

3

of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged, in the case of Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was informed that Count One has a mandatory minimum sentence of ten years imprisonment. The defendant was informed that the maximum possible penalty for <u>each count</u> in Counts Fourteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three and Twenty-Four is twenty years imprisonment, a $1,000,000 fine, and supervised release. The defendant was informed that Count Twenty has a maximum possible penalty of forty years imprisonment, a $2,000,000 fine, and a period of supervised release. Finally, the defendant was told that Count Twenty has a mandatory minimum sentence of five years imprisonment.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until

4

after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

Defendant testified he agreed that USSG § 2D1.1 is applicable to his criminal conduct, and that for purposes of USSG §§ 2D1.1 and 1B1.3 he should be held responsible for at least 500 grams but less than 1.5 kilograms of cocaine base. The defendant also stated he understood that the government is under no obligation to file a motion for substantial assistance, but to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b) if his offense level is 16 or greater. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration. The defendant stated that he understood that any information given by him during a proffer or cooperation would

5

not be used against him to enhance his sentence under USSG § 1B1.8. The government agreed that it would not oppose his request for the court to recommend a drug treatment program through the Bureau of Prisons and that the government would not oppose his request for the court to recommend he be incarcerated in a facility near Winchester, Virginia.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective and "very good." The defendant testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Count One of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

6

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offense charged is as follows:

Come now the United States of America, by counsel, and VOLNER MARSAILLE, by counsel and in proper person, and stipulate to following facts in support of the guilty plea. The parties agree that the stipulated facts set forth below are accurate in every respect and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt. In addition, the United States and I agree to the stipulation of facts with the belief that said stipulation sets forth the relevant facts and circumstances as required by Section 6B1.4 of the Sentencing Guidelines. The parties reserve the right to introduce additional facts, and stipulate as follows:

Beginning at an unknown date but not later than January 2002, and continuing to September 6, 2006, an agreement existed in the Western District of Virginia between two or more persons to distribute and possess with intent to distribute 50 or more grams of cocaine base, or "crack". The defendant knew of the agreement, and he knowingly and voluntarily became a member of the conspiracy.

It was a part of this conspiracy that crack cocaine and/or powder cocaine was transported from Southeast Florida to the Winchester, Virginia, area by individuals known and unknown to the Grand Jury, including, but not limited to CELESTE JOSEPH, MARSAILLE VOLNER, and ALMOSSE TITTI.

It was a part of this conspiracy that Cartwright's Recreation Center and its surrounding property was used by persons known and unknown to the Grand Jury, including but not limited to, MARSAILLE VOLNER, ANDRE FERNE SAINT-JEAN, ALONZO WILDS, and MANNOT LUSCA to sell, store

7

and facilitate the distribution of crack cocaine within the city of Winchester, Virginia.

On June 28, 2004, MARSAILLE VOLNER sold .403 grams of crack cocaine to a person working under the close supervision of law enforcement outside Cartwright's Recreation Center in the City of Winchester, Virginia.

On February 25, 2005, MARSAILLE VOLNER sold .79 grams of crack cocaine to a person working under the close supervision of law enforcement

On March 10, 2005, MARSAILLE VOLNER sold .074 grams of crack cocaine, just outside Cartwright's Recreation Center, to a person working under the close supervision of law enforcement.

On May 3, 2005, MARSAILLE VOLNER sold 1.1 grams of crack cocaine to a person working under the close supervision of law enforcement.

On August 29, 2005, a confidential informant (CI) met with MANNOT LUSCA at a motel located in Winchester, Virginia. LUSCA advised the CI that MARSAILLE VOLNER was en route to Winchester, Virginia, from Florida. Shortly thereafter, on the same date, while the CI was with LUSCA, VOLNER entered LUSCA'S room with luggage. VOLNER then left LUSCA'S room and walked into another motel room occupied by a person unknown to the Grand Jury. The CI then walked to the room where VOLNER was located and observed VOLNER sitting at a table. On the table was a one (1) gallon size zip-lock bag that was filled almost to the top with what appeared to be powder cocaine, a box of .45 caliber ammunition, and an empty gun holster.

On August 11, 2006, MARSAILLE VOLNER sold .13 grams of crack cocaine to a person working under the close supervision of law enforcement.

On August 14, 2006, MARSAILLE VOLNER sold .1 grams of crack cocaine to a person working under the close supervision of law enforcement.

On August 16, 2006, MARSAILLE VOLNER sold a quantity of crack cocaine to a person working under the close supervision of law enforcement.

Interviews with witnesses and coconspirators as of the date of this Statement of Facts establish that MARSAILLE VOLNER, either directly or through conduct by coconspirators that was reasonably foreseeable to him, was responsible at least 500 grams but less than 1.5 kilograms of cocaine base.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One and adjudge him guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for April 23, 2007 at 11:30 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/ *[signature]*
United States Magistrate Judge

January 29, 2007.
Date